UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JACK BRENHA,<br><br>             Plaintiff,<br><br>     vs.<br><br>ESTELA DERR,<br><br>             Defendant. | CIV. NO. 22-00126 LEK-KJM |

**ORDER DISMISSING, WITHOUT LEAVE TO AMEND,
<u>PETITION UNDER 28 U.S.C. § 2241 FOR A WRIT OF HABEAS CORPUS</u>**

Before the Court is pro se Petitioner Jack Brenha's ("Petitioner" or "Brenha") Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus, filed on March 28, 2022 ("Petition"). [Dkt. no. 1.] On April 11, 2022, Brenha filed his Motion in Support of Petitioner's Petition Under 28 U.S.C. 2241 for Writ of Habeas Corpus ("Supplement"). [Dkt. no. 5.] On May 11, 2022, Respondent Estella Derr, Warden of the Federal Detention Center in Honolulu, Hawai`i ("Respondent" or "Warden Derr" and "FDC Honolulu"), filed her Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Response"). [Dkt. no. 7.] Brenha filed his Response to Answer to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. 2241 ("Reply"). [Dkt. no. 8.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for

the District of Hawaii ("Local Rules"). Brenha's Petition is dismissed, without leave to amend, for the reasons set forth below.

## BACKGROUND

On September 22, 2021, Brenha was sentenced to 27 months of imprisonment and 3 years of supervised release after pleading guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [United State v. Brenha, CR 20-00128 DKW ("CR 20-128"), Judgment in a Criminal Case, filed 9/22/21 (dkt. no. 55) ("Judgment"), at 1-3.] Brenha was arrested for the offense on July 30, 2020, and he was ordered detained pending trial. See CR 20-128, Arrest Warrant (returned executed), filed 7/31/20 (dkt. no. 8); id., Minutes - EP: Telephonic Detention Hearing, filed 8/6/20 (dkt. no. 9). At the time he filed the Petition, Brenha was incarcerated at FDC Honolulu, [Petition at PageID.1,] and his projected release date was June 27, 2022, [id. at PageID.7].

The sole ground that Brenha raises in the Petition is that he has been incorrectly classified as ineligible for time credits under the First Step Act ("FSA"). Brenha asserts he was classified as ineligible because, according to FDC Honolulu records, he "refused" psychology classes that are among the anti-recidivism classes identified as a requirement for certain time credits under the FSA. [Id. at PageID.6-7.] Brenha

2

asserts he did not refuse to participate in the classes; rather, they were unavailable to him because FDC Honolulu only offers "very few classes that have limited space.  Inmates have been told that this is due to staffing issues." [Id. at PageID.7.] Brenha argues that, under the Department of Justice ("DOJ") rules regarding FSA time credits, inmates are not to be punished if they are unable to participate in anti-recidivism classes for reasons beyond their control, and therefore he is entitled to the time-credit benefits associated with the classes that he would have attended if the classes were available at FDC Honolulu.  [Id. (citing FSA Time Credits, 87 Fed. Reg. 2705 (Jan. 19, 2022)).]  According to Brenha, during the administrative remedy process, Warden Derr acknowledged that classifying him as ineligible was an error.  [Id. at PageID.6.]

Brenha also "disputes his status as a medium level," but he argues that, regardless of that status, he is entitled to a minimum of 10 days of FSA time credit for each month of imprisonment.[1]  [Id. at PageID.7.]  At the time he filed the

---

[1] 28 C.F.R. § 523.42(c) states:

> Amount of FSA Time Credits that may be earned.
>
> > (1)  For every thirty-day period that an eligible inmate has successfully participated in [Evidence-Based Recidivism Reduction ("EBRR")] Programs or [productive activities ("PAs")] recommended based on the
> > (. . . continued)

3

Petition, Brenha had served 20 months of imprisonment. Thus, he asserts he was entitled to at least 200 days of FSA time credit, and should have been released to begin his term of supervised release in 2021. [Id.]

Warden Derr's Response distinguishes between Brenha's eligibility to **earn** FSA time credits and his eligibility to have those credits **applied** to his sentence. See Response at 8. Warden Derr presents evidence that Brenha utilized the

---

> inmate's risk and needs assessment, that inmate will earn **ten days** of FSA Time Credits.
>
> (2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn **an additional five days** of FSA Time Credits if the inmate:
>
> > (i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and
> >
> > (ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

(Emphases added.) The classification of inmates as minimum, low, medium, or high risk of recidivism is performed using the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") score. See Walsh v. Boncher, No. 22-cv-11197-DLC, 2023 WL 363591, at *2 (D. Mass. Jan. 23, 2023) (discussing the relevant framework for FSA time credits).

administrative remedy process to challenge his classification as ineligible to earn FSA time credits due to his "'refusal' to participate in the Anger Management course[.]" Id., Decl. of Kris Robl ("Robl Decl.") at ¶¶ 4.a-b;[2] see also Robl Decl., Exh. D (Administrative Remedy Update for Brenha, dated 3/16/22, with administrative remedy documents). Brenha's challenge was resolved in his favor, and his records were updated to reflect that he is eligible to earn FSA time credits. See Robl Decl. at ¶¶ 4.c-d, 12. However, Brenha remained ineligible to have FSA time credits applied to his release date "due to his classification as a medium risk for recidivism[.]" [Id. at ¶ 13.] 18 U.S.C. § 3624(g) states:

> Prerelease custody or supervised release for risk and needs assessment system participants.--
>
> > (1) Eligible prisoners.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--
> >
> > > (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

---

[2] Kris Robl ("Robl") is a FDC Honolulu Unit Manager, and she has held that position since October 2018. [Robl Decl. at ¶ 3.] Robl's duties include performing "custody classification reviews, Second Chance reviews, Residential Re-Entry and home confinement recommendations, and FSA Risk and Needs assessments." [Id.]

5

>    (B)  has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a **minimum or low recidivism risk**, during the prisoner's term of imprisonment;
>
>    (C)  has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and
>
>    (D) . . . .
>
>    >    (ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a **minimum or low risk to recidivate** pursuant to the last reassessment of the prisoner.

(Emphasis added.)

Warden Derr argues the Petition should be dismissed because Brenha failed to exhaust the administrative remedy process for his challenge to his medium-recidivism-risk classification. See Response at 3. Even if this Court considers the merits of the Petition, Warden Derr argues the Petition should be denied because the DOJ and the Federal Bureau of Prisons ("BOP") "have absolute agency discretion to enforce and implement the FSA." [Id. at 9 (emphasis omitted).]

At the time he filed the Reply, Brenha was still incarcerated at FDC Honolulu. See dkt. no. 8-1 (mailing documentation for the Reply). When Warden Derr filed the Response, Brenha's statutory release date was projected to be

6

June 27, 2022, and his full term expiration date was October 26, 2022. See Robl Decl., Exh. G (Sentence Monitoring Computation Data as of 04-18-2022 ("Computation Data")) at 2.[3] As of the date of this Order, Brenha has completed his term of incarceration for CR 20-128, but he is not currently serving his term of supervised release for CR 20-128 because he is in BOP custody at FDC Honolulu as a pretrial detainee, charged with three drug-related offenses in another case. See Federal Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited Mar. 10, 2023); United States v. Brenha, CR 22-00074 DKW ("CR 22-074"), Criminal Complaint, filed 6/22/22 (dkt. no. 1); CR 22-074, Arrest Warrant (returned executed), filed 6/27/22 (dkt. no. 6) (stating Brenha was arrested on 6/27/22 in Honolulu, Hawai`i). Brenha is being detained pending the CR 22-074 trial, which is currently scheduled to begin on May 1, 2023. See CR 22-074, Order of Detention Pending Trial, filed 7/5/22 (dkt. no. 11); id., Criminal Scheduling Order, filed 2/16/23 (dkt. no. 29).

---

[3] Brenha's statutory projected release date was based on his earned and projected good conduct time ("GCT") credits, as of a October 19, 2021 computation. See Robl Decl., Exh. G (Computation Data) at 2. Relevant to the instant case, GCT credits are awarded pursuant to 28 C.F.R. § 523.20(d)(2), and FSA time credits are earned pursuant to 28 C.F.R. § 523.42(c), and applied pursuant to 18 U.S.C. § 3624(g). Brenha's GCT credits are not at issue in the instant case.

**STANDARD**

> "Review of the execution of a sentence may be had through petition for a writ of habeas corpus under 28 U.S.C. § 2241." United States v. Giddings, 740 F.2d 770, 772 (9th Cir. 1984). Section 2241 allows "the Supreme Court, any justice thereof, the district courts and any circuit judge" to grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). A district court must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Yanagihara v. Derr, Civil No. 22-00145 JAO-RT, 2023 WL 2163685, at *3 (D. Hawai`i Feb. 22, 2023). "In particular, a petitioner may challenge computation of a prisoner's sentence by prison officials via a section 2241 petition." Walsh, 2023 WL 363591, at *2 (citation and internal quotation marks omitted).

**DISCUSSION**

**I.   Mootness**

The Court first addresses the issue of mootness because Brenha's circumstances have changed since he filed the Petition.

> Article III of the Constitution limits the jurisdiction of the federal courts to "actual, ongoing" "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); see United States v. Strong, 489 F.3d 1055, 1059 (9th Cir. 2007). "Failure to satisfy Article III's case-or-controversy requirement renders a habeas petition moot." Kittel v. Thomas, 620 F.3d 949, 951 (9th Cir. 2010) (citation and internal

8

>           quotation marks omitted).  Because "parties must
>           continue to have a personal stake in the outcome
>           of [a] lawsuit," Spencer v. Kemna, 523 U.S. 1, 7
>           (1998) (citation and internal quotation marks
>           omitted), generally, once a prisoner is released
>           from custody, a habeas petition challenging the
>           prisoner's confinement becomes moot unless there
>           is "'some concrete and continuing injury other
>           than the now-ended incarceration.'"  Qassim v.
>           Bush, 466 F.3d 1073, 1076 (D.C. Cir. 2006); see
>           also Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir.
>           1995) ("An inmate's release from prison while his
>           claims are pending generally will moot any claims
>           for injunctive relief relating to the prison's
>           policies unless the suit has been certified as a
>           class action." (citations omitted)).

Yanagihara, 2023 WL 2163685, at *3.

Brenha has served the term of incarceration that was imposed in CR 20-128, but he has not completed his term of supervised release imposed in CR 20-128.  See, e.g., CR 20-128, Judgement at 2-3.  If Brenha is convicted and sentenced to a term of imprisonment in CR 22-074, any additional FSA time credits that he is entitled to if he prevails on his Petition in the instant case can be applied to his CR 22-074 sentence.  Further, if no term of imprisonment is imposed on Brenha in CR 22-074, he will still be required to serve his term of supervised release for CR 20-128, and any additional FSA time credits can be applied to that term.  See Yanagihara, 2023 WL 2163685, at *3 ("it is possible that, any time Petitioner served in custody beyond that which he should have due to a miscalculation of earned time credits could form **part** of the

9

basis of any modification of his supervised release term" (emphasis in Yanagihara) (some citations omitted) (citing 18 U.S.C. § 3583(e))). Accordingly, the Petition is not moot.

## II. **Exhaustion of Administrative Remedies**

"Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam) (citations omitted). But, because § 2241 does not statutorily require exhaustion, federal courts "have discretion to waive the exhaustion requirement when it is prudentially required . . . ." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004) (citations omitted). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

Warden Derr outlines the BOP administrative grievance process as follows:

> BOP's Administrative Remedy Program has four levels. See 28 C.F.R. § 542.10-.19. First, an inmate must try to resolve the issue informally with Unit Team staff, using the BP-8 form. 28 C.F.R. § 542.13(a). If informal resolution is

10

> unsuccessful, the inmate may submit an administrative remedy request to the Warden using the BP-9 Form. 28 C.F.R. §§ 542.13(a), 542.14. If unsatisfied with the Warden's response, the inmate may appeal to the Regional Director using the BP-10 Form. 28 C.F.R. § 542.15. Finally, if unsatisfied with the Regional Director's response, the inmate may appeal to the General Counsel using the BP-11 Form. Id. An inmate properly exhausts available remedies by appealing through to the General Counsel. See id.; see also Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018).

[Response at 5-6.]

Warden Derr argues Brenha failed to exhaust the administrative remedies process for the specific challenge to his medium-recidivism-risk classification and, therefore, the Petition must be dismissed. See id. at 3. During his incarceration at FDC Honolulu for CR 20-128, Brenha initiated the administrative remedy process only once. See Robl Decl., Exh. D at PageID.68 (Administrative Remedy Update). Brenha's BP-8 form, which he dated February 24, 2022, states:

> **Specific Complaint and Requested Relief**: My Initial Needs sheet indicates 2 "Refusals" of classes that I not only did not refuse to take, but I actively attempted to participate in. These "Refusals" negatively reflect on my recidivism score and may preclude me from FSA credit. I would like these remarks removed.

[Id. at PageID.71 (emphasis indicating form text).] On March 1, 2022, a correctional counselor commented: "Upon completing the needs assessment through Trulincs, your needs for psychology services have been determined. You will be added to the

11

appropriate waitlists for the groups you previously requested through psychology services." [Id.] Robl signed the form, indicating her review on March 1, 2022, and the form noted that the issue Brenha raised was informally resolved. [Id.]

Brenha submitted a BP-9 form, dated March 3, 2022, formally requesting an administrative remedy and arguing the issues raised in his BP-8 form were not resolved by the counselor's response. See id. at PageID.70. Brenha wrote:

> The main objective is getting the refusals removed. I have done all there is to get these classes. I'm on a waiting list and that should not put me in the "refusal" category because that makes me automatically "ineligible" for FSA (FCT) credit. I have been here for 20 months, how can I refuse a parenting class that has never been offered? As far as the anger management class "refusal", there has been only one class last year which I was "refused" becauced [sic] I had not been sentenced yet. Instead of refused, it should be "on the waiting list" or "not available at this time". This is false information and is keeping me from what I have coming to me by law because of it. More importantly. This information could possibly negitively [sic] effect my probationary (supervision) period. Therefore, I would like these properly corrected and my FSA status updated as ELIGIBLE.

[Id. (emphasis in original).]

On March 14, 2022, Warden Derr responded to Brenha's BP-9 request. [Id. at PageID.69.] Warden Derr characterized the BP-9 request as arguing Brenha's "FSA needs were not properly corrected" and seeking to his "FSA status . . . updated as eligible." [Id.] Warden Derr stated Brenha's Unit Team

12

informed him that he was "added to the appropriate wait lists for requested groups through Psychology Services," and Psychology Services confirmed this and confirmed that his "FSA needs were no longer in refusal status." [Id.]  Warden Derr therefore stated Brenha's BP-9 request was granted and informed him that he had twenty days to appeal the response to the Regional Director in Stockton, California.  [Id.]  Thus, Brenha had until April 3, 2022 to submit a BP-10 form to the Regional Director.  There is no indication in the record that Brenha submitted a BP-10 form to appeal Warden Derr's March 14, 2022 response to his BP-9 request before he filed the Petition, accord Petition at PageID.2 (stating that, after the 3/14/22 decision, he did not "file a second appeal to a higher authority, agency or court"), nor is there any indication in the record that he did so while the Petition was pending.

   Even if Brenha's BP-8 and BP-9 forms can be construed as addressing the issue of whether he was erroneously classified as in the medium-recidivism-risk category, he did not pursue the process through the BP-10 and BP-11 stages.  This Court therefore concludes that Brenha failed to exhaust his administrative remedies.  Brenha's Petition must be dismissed unless this Court waives the exhaustion requirement.

   Brenha appears to argue the exhaustion requirement should be waived because, when he received Warden Derr's

13

March 14, 2022 response to his BP-9 request, there was "less than one month until his home detention eligibility date," and therefore he did not have enough time either to appeal Warden Derr's response or to initiate a new administrative remedy process that specifically addressed his recidivism risk classification.  See id.  BOP records indicate that Brenha had a "home detention eligibility date" of April 7, 2022.  See Robl Decl., Exh. G (Computation Data) at 2.  However, although he was apparently eligible to be **considered** for home detention as of April 7, 2022, Brenha was not granted home detention, as evidenced by the fact that he was still at FDC Honolulu when he filed the Reply on May 17, 2022.  Further, it appears that Brenha's BP-8 informal resolution request and his BP-9 formal request for administrative remedy were handled by FDC Honolulu staff in a timely manner.  See Robl Decl., Exh. D at PageID.71 (staff response dated 3/1/22 to BP-8 form dated 2/24/22); id. at PageID.69 (Warden Derr's response dated 3/14/22 to BP-9 form received on 3/4/22).

      Brenha had a significant amount of time during which he could have either continued with the administrative remedy process by appealing Warden Derr's March 14, 2022 response to his BP-9 request or started a new administrative remedy process

14

by submitting another BP-8.[4]  However, Brenha chose not to do so. In addition, the factors that are considered in the calculation of an inmate's PATTERN score - which is used to determine whether an inmate has a minimum, low, medium, or high risk of recidivism - include items that should be evaluated by the BOP in the first instance.  Such items include: the history and seriousness of any escape attempts; and the number, seriousness, and recency of any incident reports. See BOP, Male PATTERN Risk Scoring, https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3 (last visited Mar. 10, 2023).  This Court concludes that waiving the exhaustion requirement is not appropriate under the circumstances of this case because exhaustion

> would aid "judicial review by allowing the appropriate development of a factual record in an expert forum," conserve "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and allow "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." Ruviwat [v. Smith], 701 F.2d [844,] 845 [(9th Cir. 1983) (per curiam)]; see also Yanagihara v. Derr, 2023 WL 2163685[] (D. Haw. Feb. 22, 2023) (dismissing habeas petition challenging calculation of First

---

[4] Arguably, once Brenha returned to FDC Honolulu as a pretrial detainee in connection with CR 22-074, he again had access to its administrative remedy process and could have submitted another BP-8 to address his recidivism-risk classification and eligibility for FSA time credits during his CR 20-128 incarceration.  As a pretrial detainee, Brenha cannot earn time credits related to CR 22-074. See 18 U.S.C. § 3632(d)(4)(B)(ii).

15

> Step Act earned time credits because petitioner failed to exhaust administrative remedies). Waiving the exhaustion requirement in this case would only encourage other inmates to ignore the BOP's administrative remedy program.

Cacayorin v. Derr, CIVIL NO. 23-00077 JMS-WRP, 2023 WL 2349596, at *4 (D. Hawai`i Mar. 3, 2023).  Brenha's Petition is therefore dismissed because he failed to exhaust his administrative remedies.[5]

The dismissal of Brenha's Petition is without leave to amend in the instant case, but is also without prejudice to the filing of a new § 2241 petition after he has exhausted his administrative remedies.  In other words, Brenha will not be allowed to file an amended Petition in the instant case, and the instant case will be closed, but he may choose to file a new § 2241 petition, if he can show either that he has exhausted his administrative remedies or that there are new circumstances which warrant the waiver of the exhaustion requirement.

## CONCLUSION

For the foregoing reasons, Brenha's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus, filed March 28, 2022, is HEREBY DISMISSED WITHOUT LEAVE TO AMEND because Brenha failed

---

[5] Because the Petition is dismissed for failure to exhaust administrative remedies, this Court does not address Warden Derr's argument asserting the DOJ and BOP have absolute discretion in decisions regarding the enforcement and implementation of the FSA.  See Response at 9.

16

to exhaust his administrative remedies.  The Clerk's Office is DIRECTED to enter judgment and close the case on **March 31, 2023,** unless Brenha files a timely motion for reconsideration of this Order.

    IT IS SO ORDERED.

    DATED AT HONOLULU, HAWAII, March 16, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JACK BRENHA V. ESTELA DERR; CV 22-00126; ORDER DISMISSING, WITHOUT LEAVE TO AMEND, PETITION UNDER 28 U.S.C. SECTION 2241 FOR A WRIT OF HABEAS CORPUS**